UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:09CV65-J

JACK D. SMITH  PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security  DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is claimant Jack Smith's Complaint seeking judicial review of the unfavorable decision rendered by the defendant Commissioner denying his claim for disability insurance benefits ("DIB"). After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision is supported by substantial evidence and should be upheld.

PROCEDURAL HISTORY

Plaintiff filed his present application for DIB benefits on September 28, 2006 alleging that he became disabled on July 1, 2005 at age 47 as a result of back, neck, fibromyalgia, and panic attacks (Tr. 130). As noted in the ALJ's decision, the claimant's date last insured is December 31, 2005, so there is a very narrow window in which the claimant must establish disability. Claimant's previous work includes self-employment in his auto body repair shop, railroad machinist and painter at VMV (Tr. 131). Following a hearing at which the claimant and a vocational expert offered testimony, Administrative Law Judge James Craig ("ALJ") found that the claimant suffers from severe impairments of chronic cervical and thoracic strain and apparent fibromyalgia (Tr. 17). These conditions prevent the plaintiff from performing his past work in auto body repair or as a

railroad machinist/painter. Nonetheless, the ALJ found the he retains the residual functional capacity to perform a range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of light work activity. The claimant could sit, stand and/or walk, about six hours each, in an eight-hour workday, with normal rest and meal breaks about every two hours. He could lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently. He could push/pull within these weights, but not on a repetitive basis. He could never kneel or crawl, but he could occasionally stoop and crouch. He had to avoid exposure to weather, extreme heat/cold, wetness and/or humidity, vibration, moving/mechanical parts, electrical shock and exposed heights. Because of his level of pain and pain medication, he could not carry out detailed instructions or make complex decision.

Plaintiff appeals from this unfavorable decision.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner, 42 U.S.C. §405(g); Elam ex. Rel. Golay, v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court

even thought the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

Plaintiff argues that the ALJ committed the following errors: 1) the ALJ improperly relied upon the outdated medical opinions of Drs. Huff and McCord in determining his residual functional capacity and in weighing his credibility; and 2) the ALJ failed to accord the disabling opinions of Dr. Porter the weight they deserved under the treating physician standard.

## ANALYSIS

This case is somewhat unique because of the relatively narrow window between the alleged date of disability on July 1, 2005 and the claimant's date last insured which is December 31, 2005. The claimant alleges overwhelming, disabling pain which had its origins in a 1994 work-related injury and progressively worsened over the years. With pain medications and injections, plaintiff was able to continue working at his railroad job and then at his own auto body shop until 2005. At that time, he contends that it became unbearable to work because of the pain.

### Pain and credibility analysis

The claimant alleges that the ALJ erred in evaluating his complaints of disabling pain. SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

3

20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1) Your daily activities;

2) The location, duration, frequency, and intensity of your pain or other symptoms;

3) Precipitating and aggravating factors;

4) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

5) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

6) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter, Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other, Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). In other words, discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence, Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so, Auer v. Secretary, 830 F.2d 594, 595 (6th Cir. 1987). While plaintiff disagrees with the ALJ's stated reasons for rejecting his credibility, it is nonetheless clear

to this Court that the ALJ stated sufficient reasons for his credibility determinations. The ALJ carefully analyzed the claimant's chronological medical treatment, particularly noting portions of Dr. Porter's records in the month prior to the alleged onset date which indicate his condition is "stable," "no better – no worse," and that he had both good and bad days. The ALJ thoroughly covered the treatment that claimant received, and found that there was no objective basis to find a worsening of his condition. While the ALJ did credit the claimant's testimony regarding pain to some degree, he did not fully credit it based upon the record. Accordingly, the Court finds that the ALJ properly analyzed the evidence of record and set forth specific reasons for rejecting plaintiff's complaints of debilitating pain (Tr. 18-20).

The ALJ carefully analyzed the records of Drs. Huff and McCord, the treating orthopedic specialists, concluding that through the last of that specialized treatment, no medical source had assessed plaintiff with limitations that precluded all work activity. The ALJ found that the work restrictions given by Dr. Huff were still appropriate, as well as the recommendations of Dr. McCord. Thus, the ALJ found that claimant's previous work was precluded. The issue then became what, if anything, the claimant could still do despite his limitations.

### Residual functional capacity

Residual functional capacity is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden of proof in establishing his or her residual functional capacity, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999). While the determination of a claimant's RFC is "reserved to the

Commissioner," it should be based upon the medical and non-medical evidence as a whole. 20 C.F.R. §416.927(e)(2).

This case was denied at the fifth and final step of the sequential evaluation process based upon a finding that, although he no longer can perform his past relevant work, the claimant retains the ability to perform other jobs that exist in significant numbers in the national economy. The vocational expert ("VE") testified that an individual with the limitations stated in Finding 5, supra, would retain the ability to perform a limited range of light work in the national economy, including light, unskilled cashier and sedentary, unskilled information clerk.

At this last step of the sequential evaluation process, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exists in the national economy that the claimant can still perform, Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990). In cases such as this one, wherein the fifth-step denial was predicated upon vocational testimony, the VE's testimony constitutes substantial evidence in support of the ALJ's decision. Unless the claimant points the Court to evidence in the administrative record which the ALJ was required to accept that between July 1, 2005 and December 31, 2005, the claimant suffered from an additional, vocationally-significant limitation that was not contemplated by the RFC presented to the VE, then the Court should affirm the denial. Varley v. Secretary, 830 F.2d 777 (6th Cir. 1987). The claimant has failed to identify any such evidence.

The ALJ relied upon the medical evidence that was best supported in formulating the claimant's residual functional capacity. Specifically, he relied upon the limitations recommended by the treating orthopedic specialists in the record. While claimant alleges that his condition has worsened since those limitations were rendered, the ALJ did not find support for such degree of

worsening. The claimant has failed to establish functional limitations greater than those set forth in the ALJ's RFC determination, and the Court declines to disturb those findings.

Treating physician rule

The claimant argues that the ALJ erred in failing to give controlling weight to the opinions of claimant's treating physician, Dr. Andrew Porter. This argument involves application of what is commonly known as the treating physician rule. The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given *controlling* weight unless supported by clinical or diagnostic findings. See Walters v. Commissioner

of Social Security, 127 F.3d 525, 530 (6th Cir.1997); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993); Kirk v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

Dr. Porter completed an assessment on April 23, 2008 wherein he opined that since July 1, 2005, the claimant could not complete a 40 hour work week and could only sit, stand or walk two hours each in an eight hour day (Tr. 537). He indicated that these limitations were supported by his diagnoses of chronic LS back pain, severe anxiety with history of panic attacks, severe muscle spasms and fibgromyalgia (Tr. 537). He noted none and slight limitations in the categories of understanding/memory and sustained concentration/persistence (Tr. 538), noting that the claimant's problems were physical, not mental. There were only none to slight limitations noted in the social interaction and adaptation categories (Tr. 539). The ALJ discusses Dr. Porter's report at Tr. 21, and explains why he chose to give it little weight:

> In this case, the opinion of Dr. Porter cannot be afforded "controlling weight" because it does not meet the four-part test above. The objective medical and "other" evidence does not establish the existence of a condition which can reasonably cause the degree of limitation Dr. Porter describes. Imaging of the cervical, thoracic and lumbar spine shows minimal findings. The claimant does have chronic cervical/thoracic strain, treated with medication for many years, without evidence of a change in his condition. Dr. Porter's opinion is inconsistent with the substantial and "other" evidence in this case.

As discussed above, the ALJ chose instead to accept the opinions of the treating orthopedic specialists. Though their opinions pre-date the alleged July 1, 2005 onset date, the ALJ points out that there is no evidence of a worsening in claimant's condition since that time. This position is supported by the fact that the claimant continued to work with these conditions for many years, with

the assistance of conservative therapy and pain medications. Dr. Porter's treatment notes from 2005 also conflict with the disabling opinions rendered in Dr. Porter's 2008 assessment. Specifically, the notes indicate that claimant's condition is about the same, and that he would be unable to work in his auto body shop without the prescribed pain medications. In sum, the ALJ did not err in his analysis of the treating physician's opinion in this case.

## CONCLUSION

The Court finds that the ALJ properly performed his duty as the trier of fact in resolving conflicts in the evidence. See Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Accordingly, for the reasons stated,

IT IS ORDERED: 1) the decision of the Commissioner is found to be supported by substantial evidence and is hereby AFFIRMED. 2) A Judgment in conformity with this Memorandum Opinion has this day entered.